**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEONARD EDELSON,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>STEPHEN CHEUNG,<br><br>　　　　　　Defendant. | Civil Action No. 13-5870 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court on Leonard Edelson's ("Plaintiff") application for a preliminary injunction pursuant to Fed. R. Civ. P. 65 and a writ of attachment pursuant to Fed. R. Civ. P. 64(a) and New Jersey Court Rule 4:60-5(a). Plaintiff seeks a writ of attachment and a preliminary injunction against Defendant Stephen Cheung ("Defendant"). The Court has considered the papers submitted, as well as the oral argument of the Parties heard on June 9, 2015. For the reasons that follow, Plaintiff's application for a writ of attachment and a preliminary injunction is **DENIED**.

I. Factual Background

Plaintiff Leonard Edelson has owned Westchester Lace & Textiles, Inc. ("Westchester"), located in North Bergen, New Jersey, since 1976. (Pl. Br. at 3.) Westchester sells lace to a number of large undergarment manufacturers in the United States. (Pl. Br. at 3.) Westchester's lace was manufactured in its North Bergen factory until 2003, when it became economically unfeasible for production to continue in North Bergen. (Pl. Br. at 3.) In 2004, Edelson and Cheung formed Eastchester Lace & Textiles ("Eastchester") with two additional partners,

Stephen Ma and C.K. Chiu, to manufacture lace in China. (Pl. Br. at 3-4.) Eastchester, according to Defendant, was known as Yishida in China. (Def. Br. at 1.) Plaintiff obtained 50% ownership interest in Eastchester, while Ma, Chiu, and Cheung shared the remaining 50%, such that each owned 16.6%. (Pl. Br. at 4, Tr. at 9.) The new manufacturing facility and its main office were located in Jiangmen, China. (Pl. Br. at 4.)

Ma, Chiu, and Cheung were tasked with establishing the Chinese corporation due to their familiarity with business procedures in China, while Edelson provided Westchester's name, contacts, proprietary methods, copyright-protected lace designs, and his expertise in the lace manufacturing industry. (Pl. Br. at 4.) Edelson also contributed capital to establish Eastchester, including 34 machines, parts, and equipment, as well as over 133,000 pounds of yarn. (Pl. Br. at 4.) Additionally, Edelson paid Matthew Ranieri, a consultant, over $250,000 to move to China to set up the Eastchester facility and hire and teach employees to use the machinery. (Pl. Br. at 4.) Defendant and his sister-in-law, Liso Lee, managed Eastchester. They also own Frontier, a related company that managed Eastchester billing. (Pl. Br. at 5.)

In 2005, Defendant sent a letter to Plaintiff, Ma, and Chiu, indicating that the Bank of China was seeking repayment for loans Eastchester had taken out, totaling approximately $237,000. (Pl. Br. at 5, Def. Br. at 2.) As a result of Eastchester's debt, the Bank of China seized several of Eastchester's machines, which Defendant purchased back at auction with personal funds. (Tr. at 38.) Defendant offered to handle Eastchester's financial issues in exchange for acquiring full ownership of the company. (Pl. Br. at 5.) Plaintiff, Ma, and Chiu each signed a contract ("2005 Conveyance Agreement") agreeing to convey their interests in Eastchester to Cheung. (Pl. Br. at 6.) Cheung then transferred 10% of his interest in Eastchester to his son Marcus, allegedly in order to comply with a Chinese law. (Pl. Br. at 7, Def. Br. at 2, Tr. at 30.)

2

In 2006, Plaintiff and Defendant created a one-paragraph document that purported to allow Plaintiff to exercise an option for 50% interest in Eastchester ("2006 Option Agreement"). (Pl. Br. at 6.) Plaintiff alleges that Defendant drafted the 2006 Option Agreement, while Defendant alleges it was drafted by Plaintiff. (Pl. Br. at 6, Tr. at 35.) The 2006 Option Agreement, dated September 14, 2006 and signed by Defendant and witnessed by a notary public, indicated that:

> Leonard Edelson has transferred machinery and yarn and consultant services in excess of $600,000 to Eastchester Lace of Jiangmen, China. In as much as [Defendant] will own 100% of the shares after the company is reorganized, [Defendant] agree[s] to give 50% interest in that company or a successor company to Leonard Edelson at a date specified by him. He may exercise this option at any time.

(Pl. Br. at 6, Ex. 9).

Plaintiff alleges that from 2006 through mid-2013, Defendant and Lee managed Eastchester and took profits and salaries therefrom. (Pl. Br. at 7.) Defendant alleges that, while he owned Eastchester, he did not make any profits and he invested more than $200,000 in operating Eastchester. (Def. Br. at 4.) Plaintiff further alleges that Defendant, though he continued to work from 2010 through 2013, claimed to be retired and failed to report his income from Eastchester and Frontier during that period. (Pl. Br. at 7, n. 3.) Throughout this period, Edelson continued to pay Ranieri for his consulting services and to purchase lace from Eastchester, allegedly providing Eastchester with an average of $1.6 million in annual revenue between 2010 and 2012. (Pl. Br. at 8.)

In March 2009, Defendant presented Plaintiff with a potential investor. (Pl. Br. at 8.) After Plaintiff expressed concern, Defendant indicated to Plaintiff that he was the only "partner" at Eastchester. (Pl. Br. at 8.) Plaintiff alleges that Defendant began negotiations to sell

Eastchester to Hang Chen in 2012 and did not inform Plaintiff. (Pl. Br. at 8.)

In April 2013, Defendant established Eastchester Lace Corp. in New York ("Eastchester NY") to sell lace and textiles. (Pl. Br. at 8.) Defendant did not inform Plaintiff he was opening this new business. (Pl. Br. at 8.) Plaintiff alleges that Defendant hired a Westchester employee, Geremy Bernstein, to assist in opening Eastchester and competing with Westchester. (Pl. Br. at 9.) In June of 2013, Defendant forwarded Plaintiff an email from Lee, detailing financial problems allegedly afflicting Eastchester, and asked for Plaintiff's opinion. (Pl. Br. at 9.) Plaintiff provides several emails indicating his requests to meet with Defendant regarding these financial problems and the sale of Eastchester. (Pl. Br. at 9.) These requests to meet were all rebuffed. (Pl. Br. at 9.)

Plaintiff alleges that Defendant sold Eastchester on June 3, 2013 without informing Plaintiff or allowing him to exercise the 2006 Option Agreement. (Pl. Br. at 9.) Defendant indicates that he sold Eastchester to Chen for $100,000. (Def. Br. at 4.) Plaintiff also alleges that Defendant sent him several emails after June 3 requesting advice regarding the potential sale of Eastchester, though the sale had already taken place. (Pl. Br. at 10.) While Plaintiff and Defendant discussed the potential for sale, Plaintiff requested that Defendant ensure that Plaintiff receive compensation for his contributions if Eastchester were sold. (Pl. Br. at 11.) Plaintiff asserts that he tried to enforce the 2006 Option Contract at the end of July. (Pl. Br. at 11.)

Plaintiff further alleges that Defendant sought to sabotage Westchester in a number of ways, including cutting off his supply of lace from Eastchester, acquiring Westchester's customers, hiring Bernstein, advising the new owner of Eastchester not to do business with Westchester, copying Westchester's lace patterns, selling necessary machinery, and refusing to take orders from Westchester. (Pl. Br. at 12-13.) Plaintiff also alleges that Defendant advised that

4

Eastchester would no longer do business with Westchester and told Chen to notify Westchester's customers about the end of their relationship. (Pl. Br. at 14.) According to Plaintiff, Chen sent emails to four of Westchester's customers informing them that they should direct orders to Eastchester and that they would no longer accept orders through Westchester. (Pl. Br. at 15.)

Plaintiff alleges that Defendant is in the process of liquidating his assets and removing money to China (Pl. Br. at 17.) Defendant asserts that he recently sold a property he owns and transferred funds to his father-in-law in Hong Kong to repay a debt. (Def. Br. at 1.)

II. Procedural History

Plaintiff filed this lawsuit on October 2, 2013, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Compl. 4-5.) The parties exchanged written discovery requests and served responses to the discovery requests on May 14, 2014. (ECF No. 15). On May 16, 2014, Magistrate Judge Dickson entered an Order referring this case to mediation and appointed Harold I. Braff to serve as the mediator. (ECF No. 17). The parties engaged in mediation sessions with Braff on June 27, 2014 and January 13, 2015, which were both ineffective in reaching a resolution. (ECF Nos. 19, 25).

On March 12, 2015, Plaintiff moved to amend his complaint to allege two additional causes of action: fraud and unjust enrichment. (ECF No. 30). On April 2, 2015, Magistrate Judge Dickson granted the motion. (ECF No. 41). Defendant was given an extension to answer the Amended Complaint from April 16, 2015 until May 4, 2015. (ECF No. 45). On April 29, 2015, Defendant's counsel moved for leave to withdraw as counsel and requested an addition extension to answer the Amended Complaint. (ECF No. 43.) Magistrate Judge Dickson extended Defendant's time to answer to May 11, 2015 (ECF No. 49.) On May 1, 2015, Magistrate Judge Dickson granted Plaintiff's counsel leave to file for prejudgment attachment. (ECF No. 49.) On

May 5, 2015, Magistrate Judge Dickson entered an order granting Defendant's counsel's motion to withdraw. (ECF No. 49.) On May 6, 2015, Plaintiff moved for a preliminary injunction and/or a writ of attachment preventing Defendant from moving his assets overseas based on the allegation that Defendant was "liquidating his assets and removing money to China," making Defendant judgment-proof. (ECF No. 53, Pl. Br. at 17.)

III. Legal Standard

    A. Writ of Attachment

Fed. R. Civ. P. 64(a) provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." For a court to issue a writ of attachment pursuant to New Jersey Court Rule 4:60-5(a), a plaintiff must show that (1) there is a probability that final judgment will be rendered in favor of the plaintiff, (2) there are statutory grounds for the issuance of the writ, and (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment.

With respect to the first prong, a final judgment in favor of the plaintiff is "probable if it can reasonably and fairly convincingly be accepted as true, factual, or possible without being undeniably so." Sentry Ins. V. Sky Mgmt., Inc., 34 F. Supp. 2d 900, 905 (D.N.J 1999). This means that a plaintiff seeking a writ of attachment must demonstrate a *prima facie* case against the defendant. Tanner Assoc., Inc. v. Ciraldo, 33 N.J. 51, 62 (1960).

N.J.S.A § 2A:26-2(a) provides statutory grounds for attachment "where the facts would entitle plaintiff to an order of arrest before judgment in a civil action," a procedure known as *capias ad respondendum*. N.J.S.A. §§ 2A:15-41, 2A:15-42. A *capias ad respondendum* can issue in an action founded in contract or in tort. In a tort action, § 2A:15-41 provides that:

6

> [a] *capias ad respondendum* shall issue . . . only when the action is founded upon (a) an outrageous battery or mayhem, (b) a claim of damages for the misconduct or neglect of a public officer, or (c) a willful or malicious act and the defendant is a nonresident or is about to remove from the state.

In a contract action, whether the contract is express or implied, § 2A:15-42 provides that:

> A *capias ad respondendum* shall issue . . . only when the proof establishes . . . (a) that defendant is about to remove any of his property out of the jurisdiction of the court in which the action is about to be commenced or is then pending with intent to defraud his creditors, or (b) that defendant has property or choses in action which he fraudulently conceals, (c) that defendant has assigned, removed, disposed of, or is about to assign, remove, or dispose of any of his property with intent to defraud his creditors, or (d) that defendant fraudulently contracted the debt or incurred the demand.

To satisfy the third prong, a plaintiff must show that the Defendant has real property that the Court can reach and attach.

B. Preliminary Injunction

Although the Court typically applies state law in diversity actions, the Court utilizes a federal standard in examining requests to federal courts for preliminary injunctions. Instant Air Freight, Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989). A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir.1993). Whether to issue a preliminary injunction is within the trial court's discretion. New Eng. Braiding Co., v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed Cir. 1992). The United States Court of Appeals for the Third Circuit has held that "a district court has the authority to grant injunctive relief in an arbitrable dispute, provided that the traditional prerequisites for such relief are satisfied." Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir.1989). The court identified those "traditional prerequisites" as follows: (1) whether the movant has demonstrated reasonable probability of eventual success in

7

the litigation; (2) the probability of irreparable harm to movant if immediate relief is not granted; (3) the potential harm to the non-moving party; and (4) the public interest. Id. at 812-13. See also Allegheny Energy, Inc. v. DQUE, Inc., 171 F.3d 153, 158 (3d Cir. 1999). A plaintiff must establish more than a risk of irreparable injury. He must demonstrate "a clear showing of immediate irreparable injury." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 205 (3d Cir.1990) (quoting ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 225 (3d Cir. 1987)). The Third Circuit has placed particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating that "we cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." Id. at 197 (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir.1982)); see also Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989); Morton v. Beyer, 822 F.2d 364, 367 (3d Cir. 1987); Freixenet, S.A. v. Admiral Wine & Liquor Co., 731 F.2d 148, 151 (3d Cir. 1984).

IV. Discussion

    A. Plaintiff is not entitled to a writ of attachment on Defendant's property in New Jersey based on any of his claims.

Plaintiff asserts that his request for a writ of attachment satisfies the three prongs required by New Jersey Court Rule 4:60-5(a). He argues that there is a probability that final judgment on his breach of contract, breach of duty of good faith and fair dealing, fraud, and unjust enrichment claims will be rendered in his favor. To satisfy the second prong, Plaintiff asserts that New Jersey's *capias ad respondendum* statutes provide grounds for the issuance of a writ. Finally, he argues that Defendant has property in New Jersey that can be attached.

Plaintiff has not shown there is a probability that final judgment will be rendered in his

8

favor with respect to any of his claims. In order to show there is a probability that final judgment will be rendered in Plaintiff's favor, he must state a *prima facie* case on one or more of his claims.

1. *Breach of Contract*

To state a *prima facie* claim for breach of contract, Plaintiff must show that (1) a contract existed, (2) Defendant breached that contract, (3) the breach caused damage to Plaintiff, and (4) Plaintiff performed his own contractual obligations. Frederico v. Home Depot, 507 F.3d 188, 203 (3d. Cir. 2007). In order to establish that a contract existed, Plaintiff must prove the basic elements of a contract: (1) offer, (2) acceptance, and (3) consideration. Boro Constr., Inc. v. Lenape Reg'l High Sch. Bd. Of Educ., 2010 U.S. Dist. LEXIS 135822, 15 (D.N.J. 2010). Additionally, the contract must be "sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." Schulz v. United States Boxing Ass'n, 105 F.3d 127 (3d. Cir. 1997).

Though Plaintiff baldly asserts that "there is no question that Edelson and Cheung entered into a valid contract," this Court disagrees. (Pl. Br. at 22). Plaintiff alleges that Defendant breached the 2006 Option Agreement, but fails to show that a contract existed. Though it appears from the one-paragraph agreement that there was offer and acceptance, whether there was consideration is in dispute. A contract is unenforceable without consideration. Blair v. Scott Specialty Gases, 283 F.3d 595, 604. (3d. Cir. 2002). The 2006 Option Agreement states that Plaintiff "has transferred machinery and yarn and consultant services in excess of $600,000 to Eastchester" prior to the promise. It is well-established that "past consideration, as opposed to true consideration...cannot form the basis for a binding contract." J.C. Trading Limited v. Wal-Mart Stores, Inc., 947 F. Supp. 2d 449, 456 (D. Del. 2013) (citing Continental Ins. Co. v.

Rutledge & Co., 750 A.2d 1219, 1232 (Del. Ch. 2000)). According to the Restatement (Second) of Contracts, § 86 Comment a, "past consideration is inconsistent with the meaning of consideration." See also Starr v. Katz, 1994 U.S. Dist. LEXIS 14437 (D.N.J. 1994); Van Brunt v. Rauschenberg, 799 F. Supp. 1467, 1471 (S.D.N.Y. 1992). Thus, it is not clear that Edelson and Cheung entered into a valid contract.

Alternatively, Plaintiff asserts that at least one of the following constitutes consideration: (a) Plaintiff's transfer of his ownership of Eastchester to Defendant, (b) Plaintiff's continued purchasing relationship with Eastchester, and (c) Plaintiff's continued payment of Ranieri's consultant fee. For purposes of the extraordinary remedy sought, plaintiff has not made a sufficient showing of consideration. Because past promises cannot constitute consideration, the transfer of interest in the 2005 Conveyance Agreement may not constitute consideration for the 2006 Option Agreement. Additionally, it is unlikely that any of the enumerated actions could constitute consideration because they are not stated within the four corners of the contract. Where parties have "deliberately put their engagements in writing," that writing is "not only the best, but the only, evidence of their agreement." Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1010 (3d. Cir. 1980) See also Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 613 (3d. Cir. 1995). This precludes the court from considering extrinsic evidence adding to the written terms of an agreement.

Because it appears that Plaintiff is unable to show there was a valid contract at this time, he has failed to show there is a probability that final judgment will be rendered in his favor with respect to his breach of contract claim. Thus, he has failed to satisfy the first requirement for obtaining a writ of attachment on this claim.

*2. Breach of the implied covenant of good faith and fair dealing*

The covenant of good faith and fair dealing is implicit in all contracts in New Jersey. Pepe v. Riva Co., 85 F. Supp. 2d 349, 390 (D.N.J. 1999). However, in the absence of a valid contract, there can be no implied covenant of good faith and fair dealing. Id. Since Plaintiff has not adequately established that there was a valid contract, he has failed to show that there is a probability that final judgment will be rendered in his favor on this claim. Therefore, he has not satisfied the first requirement for obtaining a writ of attachment with respect to his breach of the implied covenant of good faith and fair dealing claim.

*3. Unjust enrichment*

Plaintiff asserts that Defendant received a benefit and deprived Edelson of valuable equity, property, services, and money without providing Edelson his share of Eastchester. (Pl. Br. at 24.) To show that Defendant was unjustly enriched, Plaintiff must prove that Defendant received some benefit, and that retaining that benefit would be unjust. Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 471 (D.N.J. 1999). Plaintiff has not adequately shown that Defendant received any benefit and does not rebut Defendant's assertion that he sustained significant losses in maintaining Eastchester's operations. Additionally, it seems that Edelson was not entitled to any share of Eastchester after the 2005 Conveyance Agreement. Though the 2006 Option Agreement purports to allow Edelson to obtain 50% of Eastchester upon exercise of the option, Plaintiff has not adequately shown that the 2006 Option Agreement was a valid contract.

*4. Fraud*

To state a claim for fraud under New Jersey law, Plaintiff must allege (1) a material

misrepresentation of fact, (2) knowledge or belief by the defendant of its falsity, (3) intention that the other person rely on it, (4) reasonable reliance thereon by the other person, and (5) resulting damage. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Under Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."

With respect to the 2005 Conveyance Agreement, Plaintiff suggests that Defendant materially misrepresented Eastchester's financial situation. (Pl. Br. at 6.) Plaintiff also suggests that Defendant represented to him that the business relationship between Eastchester and Westchester would not change, and that this was false. (Pl. Br. at 6.) However, Plaintiff has provided no evidence that Defendant misrepresented Eastchester's financial situation. Plaintiff has also failed to provide any evidence indicating that, at the time the 2005 Conveyance Agreement was signed, Defendant represented to him that the business relationship between Eastchester and Westchester would not change.

With respect to the 2006 Option Agreement, Plaintiff contends that Defendant made a material misrepresentation to Plaintiff in asserting that he owned 100% of Eastchester, when he owned 90% and his son owned 10%. (Pl. Br. at 7). Though it appears that Defendant's assertion that he owned 100% of Eastchester was a misrepresentation, there is no evidence that it was material or that Plaintiff relied upon it. Whether Defendant owned 100% or 90% of Eastchester, he would still be able to convey 50% of Eastchester to Plaintiff.

Plaintiff also alleges that Defendant was dishonest about Eastchester's financial situation in June of 2013. (Pl. Br. at 9). However, Plaintiff has failed to show that Defendant's description of Eastchester's finances was a misrepresentation. Plaintiff makes a conclusory statement. Plaintiff asserts that "Cheung forwarded an e-mail to Edelson that presented a false picture of

Eastchester Lace's financial condition" without providing any factual basis for concluding that his representation of Eastchester's financial condition was false. (Pl. Br. at 9). Further, there is no evidence that Cheung intended for Edelson to rely on this information; he merely asked for Edelson's opinion regarding Eastchester's financial situation. (Pl. Br. at 9, Ex. 13). Plaintiff asserts that "Cheung intended to deceive Edelson...so as to discourage Edelson from exercising his option for 50%" of Eastchester, but again provides no factual basis for this conclusion. (Pl. Br. at 9).

Plaintiff further alleges that Defendant made a material misrepresentation with respect to the timing of the sale of Eastchester, and that Plaintiff relied on this misrepresentation in choosing not to exercise his option for 50% of the company. (Pl. Br. at 9). If the 2005 Conveyance Agreement is enforceable, Plaintiff no longer had any interest in Eastchester prior to its sale, and Plaintiff has not produced sufficient evidence to show that the 2005 Conveyance Agreement is unenforceable. Plaintiff has also not sufficiently shown that the 2006 Option Agreement constitutes a contract, so even if Defendant had told Plaintiff about the sale before it occurred, there is no evidence that Plaintiff could have exercised his alleged right to 50% of Eastchester. Therefore, the alleged misrepresentation seems immaterial and does not justify the extraordinary remedy sought. Since Plaintiff has not provided facts supporting allegations of a material misrepresentation of fact, this Court finds that he has failed to adequately state a *prima facie* fraud claim.

Because Plaintiff has failed to state a *prima facie* case for any of his claims, he has failed to satisfy the first prong required for a writ of attachment. Thus, this Court declines to issue a writ of attachment.

B. <u>Plaintiff is not entitled to a preliminary injunction based on any of his claims.</u>

Under Hoxworth, a preliminary injunction cannot be granted unless Plaintiff demonstrates both a reasonable probability of eventual success in the litigation and the probability of Plaintiff suffering irreparable harm. Plaintiff argues that he will suffer irreparable harm if a preliminary injunction is not granted, based on allegations that Defendant has begun moving his assets to China and will therefore be judgment proof. However, Plaintiff has failed to demonstrate a reasonable probability of eventual success in the litigation for the reasons described above with respect to the writ of attachment. Because Plaintiff has failed to state a *prima facie* case for any of his claims, he has failed to satisfy an element necessary for granting a preliminary injunction. As a result, this Court declines to issue a preliminary injunction.

## V. CONCLUSION

Therefore, having determined that Plaintiff has not demonstrated a likelihood of success on his breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and fraud claims, the Court **denies** Plaintiff's request for the issue of a writ of attachment and a preliminary injunction.

An appropriate Order follows this Opinion.

DATED: 16 of June, 2015.

JOSE L. LINARES
U.S. DISTRICT JUDGE