**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEONARD EDELSON,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN CHEUNG,<br><br>Defendants. | Civil Action No. 2:13-cv-5870 (JLL) (JAD)<br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter comes before the Court upon Leonard Edelson's ("Plaintiff") motion to amend and supplement the Complaint to assert claims for fraudulent transfer against Defendant Stephen Cheung and to add additional parties and claims for fraudulent transfer against the proposed parties. Plaintiff moves to add Rosanne Cheung, Herman Cheung, Marcus Cheung, Eastchester Lace Corporation, and Frontier Development NY Ltd. (Collectively, the Proposed Defendants). (ECF No. 168). Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument on Plaintiff's application. Upon careful consideration of the parties' submissions and for the reasons stated below, Plaintiff's Motion to Supplement the Complaint is granted - in - part and denied – in - part.

The facts of this action have been described at length in the Court's January 12, 2017 Opinion. (ECF No. 158). In the interest of judicial economy and for the sake of brevity, the Court declines to repeat the history here.

### I. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs requests for leave to amend, allowing a party to amend its pleadings after obtaining the court's leave or the written consent of its adversary. The decision to grant or deny leave to amend is "committed to the sound discretion of the district court." Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993). While courts have broad discretion to decide motions to amend, they must "heed Rule 15(a)'s mandate that amendments are to be granted freely in the interests of justice." Voilas et al. v. General Motors Corp., et al., 173 F.R.D. 389, 396 (D.N.J. 1997) (internal citations and quotations omitted); see FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires."). This lenient standard ensures that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (internal citation omitted); see also Sabatino v. Union Township, No. , 2013 WL 1622306, at *6 (D.N.J. April 15, 2013) (internal citations omitted) (indicating that "if the underlying facts relied upon by a party might be a proper subject of relief, that party should have the opportunity to test its claims on the merits."). In the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend. Grayson v. Mayview State Hosp., 292 F. 3d 103, 108 (3d Cir. 2002); see also Arthur v. Maersk, Inc., 434 F. 3d 196, 204 (3d Cir. 2006) (stating that generally, leave to amend should be granted "unless equitable considerations render it otherwise unjust.").

Federal Rule of Civil Procedure 15(d) provides, in pertinent part, "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. Pro. 15(d). "The differences in the wording of Rule 15(a) and 15(d) are semantic only, and courts in the Third Circuit generally apply the Rule 15(a) standard to Rule 15(d) motions and liberally grant leave to supplement." Hankin Family P'ship v. Upper Merion Twp., 2012 U.S. Dist. LEXIS 1467, 2012 WL 33020 (E.D. Pa. Jan. 5, 2012) (citing Tormasi v. Hayman, No. 09-2330, 2010 U.S. Dist. LEXIS 45922, at *5 (D.N.J. May 7, 2010)). The purpose of Rule 15(d) is to "serve judicial economy, avoid multiplicity of litigation, and promotes 'as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed.'" Hassoun v. Cimmino, 126 F. Supp. 2d 353, 2000 U.S. Dist. LEXIS 18913, *360 (D.N.J. Dec. 19, 2000) (quoting Glenside West Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1118, 1134 (D.N.J. 1991)). (citations omitted).; see also 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1506 (2d ed. 1990). A district court has broad discretion to grant or deny a supplemental pleading. CMR D.N. Corp. v. City of Phila., 2011 U.S. Dist. LEXIS 25387, *11 (E.D. Pa. Mar. 10, 2011) (quoting Tormasi v. Hayman, 2010 U.S. Dist. LEXIS 45922, *4 (D.N.J. May 7, 2010).

The decision of whether to permit a supplemental pleading is within this Court's discretion. See Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188-89 (3d Cir. 1979); see also Burns v. Exxon Corp., 158 F.3d 336, 344 (5th Cir. 1998) (holding that the district court did not abuse its discretion in denying leave to file a supplemental complaint). Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith,

dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading. Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).

Fraud-based claims must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). To meet this heightened pleading standard, a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations and quotations omitted). Specifically, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. at 200. The Third Circuit has advised that, at a minimum, a plaintiff must provide the sort of factual background that would accompany "'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." In re Supreme Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted). A complaint must do more than assert generalized facts, it must allege facts specific to the parties. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658-59 (3d Cir. 1998) (where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)").

## II. **LEGAL DISCUSSION**:

Plaintiff seeks a motion to amend the Complaint to assert claims for fraudulent transfer against Defendant Stephen Cheung. (Pl. Br. at 10, ECF No. 168-1) (Prop. Sec. Am. Compl. at 40-47, ECF No. 168-25). Additionally, Plaintiff moves to supplement the Complaint to add Rosanne Cheung (Defendant's wife), Herman Cheung (Defendant's son), Marcus Cheung (Defendant's son), Eastchester Lace Corporation and Frontier Development NY Ltd. (Collectively, "the Proposed Defendants"). (Id. at 11-18). Plaintiff argues that supplementation of the Complaint is

4

crucial as the Court will have jurisdiction of the proposed parties and the Court will be able to direct these proposed parties to return the funds. (Id. at 20-27). Plaintiff argues that the above-mentioned parties should be added as these individuals and corporations are transferees of a fraudulent transfer of funds. (Id.).

In response to Plaintiff's current motion, Defendant submitted letters dated March 11, 2017 and April 6, 2017. (Def. 3/11/17 Ltr. ECF No. 169) (Def. 4/6/17 Ltr. ECF No. 174). Additionally, the Court received a letter from Defendant dated September 15, 2017, which also addressed the Plaintiff's motions. (Def. 9/15/17Ltr. ECF No. 180). Pro Se Defendant challenges Plaintiff's motion to amend by arguing that the money transferred to Hong Kong was for the purposes of repaying his debt. (Id.). Additionally, Defendant contends that his family has nothing to do with Plaintiff's action. (Def. 3/11/16 Ltr. ECF No. 169). Defendant's opposition seems grounded in an assertion of futility.

a. **Futility**:

A proposed amendment "'is futile if the amended complaint would not survive a motion to dismiss.'" County of Hudson v. Janiszewski, 351 F. App'x 662, 666 (3d Cir. 2009) (quoting Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (internal citation omitted). Therefore, "[t]he futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion." Marjam Supply Co. v. Firestone Bldg. Prods. Co., LLC, No. 11-7119 (WJM), 2014 U.S. Dist. LEXIS 46572, *9-10 (D.N.J. Apr. 4, 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

544 (U.S. 2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Court notes that Defendant bears the burden of establishing that Plaintiff's proposed supplemental claims are futile, and that, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., 106 F. Supp. 2d 761, 764 (D.N.J. 2000); accord Marjam, 2014 U.S. Dist. LEXIS 46572 at *10. "Therefore, '[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper.'" Schiano v. MBNA, 05-1771 (JLL), 2013 U.S. Dist. LEXIS 81440, *45 (D.N.J. Feb. 11, 2013) (internal citations omitted).

Against this backdrop, the Court will consider Defendants' challenges to each of Plaintiff's proposed amendments in turn.

i. **Plaintiff's additional claims against Defendant Stephen Cheung**

Plaintiff seeks an additional claim against Defendant for fraudulent transfer. (Prop. Am. Comp. 40-43, ECF No. 168-25). Plaintiff alleges that Defendant transferred his assets to the proposed defendants. (Id.). In the Proposed Complaint Plaintiff alleges that after the commencement of this action, Defendant "transferred money, property, assets and/or other items of value to hinder, delay or defraud Plaintiff in seeking to collect on a judgment." (Id. at 41).

Plaintiff cites to the Uniform Fraudulent Transfer Act N.J.S.A. 25:2-20 ("U.F.T.A."). The purpose of the U.F.T.A. "is to prevent a debtor from placing his or her property beyond a creditors reach." (Pl. Br., ECF No. 148-1, at 15) (citing Gilchinsky v. National Westminister Bank N.J., 159 N.J. 463 (1999). N.J.S.A. 25:2-25 defines when transfers are fraudulent:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditors' claim arose before or after the

6

transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transactions; or

(2) Intended to incur, or believed to reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25.

Under U.F.T.A., any creditor "with or without a judgment may (1) prosecute a suit to avoid the transfer to the extent necessary to satisfy the claim; (2) to attach or otherwise secure provisionally the asset transferred; and (3a) to enjoin further disposition of the asset transferred or other property or (3b) to appoint a receiver. Id. at 405. A creditor "that is successful on a claim for fraudulent transfer can undo the fraudulent transaction 'so as to bring the property within the ambit of collection.'" Id. (quoting Klein v. Rossi, 251 F. Supp. 1, 2 (E.D.N.Y 1966)).[1]

Additionally, Plaintiff argues that "badges of fraud" are present that demonstrates that claims against Defendant for fraudulent conveyance is not futile. In determining the intent of the Defendant N.J.S.A. 25:2-26 provides a list of factors to consider:

a. The transfer or obligation was to an insider;
b. The debtor retained possession or control of the property transferred after the transfer;
c. The transfer or obligation was disclosed or concealed;

---

[1] Plaintiff also provided an analysis under the New York Debtor and Creditor's Law ("DCL"). DCL §273 and DCL §276-§278 permit a creditor to sue a debtor for fraudulent conveyance. The Court reached the same outcome under this analysis.

7

  d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
  e. The transfer was of substantially all the debtor's assets;
  f. The debtor absconded;
  g. The debtor removed or concealed assets;
  h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
  i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
  j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
  k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Plaintiff contends that numerous "badges of fraud exist to demonstrate that the proposed claim against Defendant is not futile." (Pl. Br. at 24, ECF No. 168-1). The following are the badges of fraud Plaintiff identifies since the filing of the Complaint:

  a. Defendant transferred his fifty percent interest in their Bayside New York property to Defendant's wife with no consideration. (Pl. Br. at 11, ECF No. 168-1).

  b. Plaintiff has provided proof that on or around December 17, 2014, Defendant sold his home in Queens, New York for the total amount of $995,000.00. (Pl. Br. at 11, ECF No. 168-1 and Pl. Decl. 168-12).

  c. On or around August 2014, Defendant gave a $50,000 gift to his son Marcus for the renovations of Marcus' home.

Plaintiff argues:

  First, most of the transfers are to family members, also known as "insiders." Second, Cheung sought to conceal these transfers. Indeed, Plaintiff only learned of the transfer of the House and sale of the Cheungs' property in December 2014 as a result of searches of public information. Third, Cheung made the transfers after he had been sued. Fourth, Cheung received no consideration for these transfers.

(Id.).

Defendant argues that he transferred his share of his house to his wife because he and his wife wanted to attain a loan for his son. (Def. 3/11/17 Ltr. at 1, ECF No. 169). As to the sale of his home, Defendant states that the money from the sale of his home was transferred to his sister in law for the purposes of paying off his debts. (Def. 4/06/17 Ltr., at 1-2, ECF No. 174). In support of his argument, Defendant submitted receipts of payments he made to his sister in law Liso Lee totaling $450, 000. (Id. at 14-17). The first receipt indicates that on January 9, 2015, Defendant made a payment of $350,000 to "Ko Kit Ying & Leso Han Liso." (Id. at 14). The second receipt submitted indicates that on January 9, 2015, Defendant made a payment of $100,000 to "Ko Kit Ying & Leso Han Liso." (Id. at 16). Additionally, Defendant submitted a document entitled, "Remittance" that indicates that on October 15, 2014 Liso Lee transferred $60,000 to Defendant. (Id. at 19). Defendant submitted an additional remittance dated October 5, 2015 for an unknown amount to beneficiary Ru Jing King.[2] (Id. at 20). Defendant also submitted a document dated May 14, 2015 from HSBC. (Id. at 22). The first line of the document states "Application: Telegraphic Transfer". The document states that a loan for "Stephen Cheung from Liso Lee" paid to Deutch Atkins PC Attorney Trust. (Id. at 22). The amount on the remittance is $25,000. (Id.). The documents listed on pages 23 through 26 and 28 through 30 are not legible. (Id. at 26-28, 30). A document on page 27 indicates that Liso Lee made a payment to Deutch Atkins PC. (Id. at 27). The amount of transfer is not legible. (Id.).

The Court finds that Plaintiff has stated factual allegations that, if true, would establish that Plaintiff transferred funds with (a) actual intent to hinder, delay or defraud any creditor of the debtor and (b) without receiving a reasonably equivalent value in exchange for the transfer or

---

[2] Some of the documents Defendant submitted are illegible or difficult to read. (See Def. 4/6/17 Ltr. at 14- 30, ECF No., 174).

9

obligation. Moreover, the Court finds that Defendants actions, if true, demonstrate that (a) Defendant engaged in a transaction for "which the remaining assets of the debtor were unreasonably small in relation to the business or transactions" and that Defendant intended to incur debts beyond Defendant's ability to pay such debt pursuant to N.J.S.A. 25:2-25. The Court finds that Defendant's transfer of property and funds to family members after the filing of the Complaint serve as badges of fraud for the purpose of this analysis. Defendant has stated in numerous letters to this Court that he is living on a limited income and has no money. (ECF No. 169, 174 and 180). As to the sale of the house, Defendant did not disclose that he sold the property. This information demonstrates that Defendant attempted to conceal the transfer. In response to Plaintiff's argument that Defendant is transferring money to Hong Kong, Defendant submitted receipts to show that he made payments to his sister in-law Liso Lee for about $450,000. (Def. Ltr. 4.6.17 at 14-17, ECF No. 174). However, the receipts do not present any description or reason for payment. (Pl. Ltr., ECF No. 144). The Court did consider the Defendant's documentation showing transfer of funds from Liso Lee to Plaintiff or on Plaintiff's behalf. (Def. 4/06/17 Ltr., at 22, 27, ECF No. 174). However, the amounts transferred to Defendant or on behalf of Defendant do not add up to $450,000. In addition, Defendant has not submitted documentation addressing where the remaining amount of money for the sale of the house is located. (Def. Ltr. at 2, 9/15/2017). Finally, the Court considered Defendant's transfer of the share of his home to his wife for no consideration. The Court will therefore grant Plaintiff's motion to amend his pleading to add a count for fraudulent conveyance against Defendant Stephen Cheung.

### ii. Claims against the Proposed Defendants

Before addressing the futility analysis, the Court must determine if it has jurisdiction of the proposed defendants. A federal court has ancillary jurisdiction over "some matters

(otherwise beyond their competence) that are incidental to other matters properly before them." Brass Smith, LLC v. RPI Industries, Inc., 827 F.Supp.2d 377, 380-81 (D.N.J. 2011); see also Bryan v. Erie County Office of Children & Youth, 752 752 F.2d 316, 321 (3d Cir. 2014). The Supreme Court in Peacock v. Thomas, 516 U.S. 349, 356 (1996) recognized and approved "the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments. SEC v. Antar, 120 F. Supp. 2d 431, (D.N.J. 2000) (citing Peacock v. Thomas, 516 U.S. 349, 356 (1996). "Ancillary jurisdiction may be exercised over third parties only to the extent necessary to enforce a federal judgment." Id. at 439. (citing Peacock v. Thomas, 516 U.S. 349, 357 (1996) holding that "our recognition of these supplementary proceedings has not . . . extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment.")).

The court in Antar, however, found that "federal district courts do not have ancillary jurisdiction over claims where the judgment creditor is attempting to impose personal liability on a new defendant for the original judgment." Id. at 440 (citing Thomas, Head and Greisen Employees Trust v. Buster, 95 F.3d 1449, 1454 (9th Cir. 1996); Merrell v. Miller, 1998 U.S. Dist. LEXIS 23160, 1998 WL 329264 at *2 (E.D. Va. June 8, 1998)). The court's "ability to exercise ancillary jurisdiction over a judgment creditor's claim turns on whether the claim seeks 'to collect a judgment' or 'to establish liability' on the part of the third party." Id. at 440 (citing Peacock, 516 U.S. at 357-59).

Here, Plaintiff argues that the sole purpose of adding the proposed defendants is to "reach assets belonging to the judgment debtor but found in the hands of others, i.e., Rosanna Cheung, Herman Cheung, Marcus Cheung, ECL Corp., and Frontier." (ECF No. 168-1 at 29). On January 12, 2017, this Court Ordered Defendant to pay Plaintiff $8,844.55 in sanctions. (Order,

11

ECF No. 157). Such amount is still owed by Defendant. Although Defendant has transferred money and property to his family, Defendant continues to state that he has no money and lives on a limited income. (See Def. 9/15/2017 Ltr., ECF No. 180). Accordingly, in the present case, the Court finds that it has ancillary jurisdiction over the proposed Defendants for the purposes of enforcing a judgment in this matter.

The Court will now address whether the claims against each proposed defendant are futile.

### iii. Claim against Rosanna Cheung:

As discussed above, Plaintiff asserts a claim for fraudulent transfer against proposed defendant Rosanna Cheung. The record demonstrates that on December 17, 2014, Defendant sold a house located at 42-04 222nd Street, in Bayside, Queens in the state of New York for $995,000. (Pl. Br., at 11, 22, ECF No. 168-1). Rosanna Cheung testified at her deposition that Defendant transferred $450,000 of the proceeds to Rosanna's relatives in Hong Kong for owed debts for payment of loans. (Id. at 11). Plaintiff argues that Defendant has failed to produce the discovery concerning "the whereabouts of those substantial funds." (Id.). Additionally, Rosanna Cheung testified that on June 7, 2016, Defendant entered into a "Separation/Property Settlement Agreement." (Pl. Br., at 11, ECF No. 168-1). Defendant transferred to his wife, Rosanna Cheung, his 50% interest in the property located at 220-20 46th Avenue, in Bayside, Queens in the state of New York (Id.). At her deposition, Rosanna Cheung testified that the transfer of interest was made with no consideration. (Id.).

The Court finds that Plaintiff has demonstrated that the claims against proposed defendant Rosanna Cheung, if true, would not be futile. Plaintiff has properly pled a claim for fraudulent transfer. Rosanna Cheung's testimony demonstrates that after Plaintiff brought this action,

Defendant transferred a portion of his interest of his property to Rosanna Cheung with no consideration. The Court will permit Plaintiff to add Rosanna Cheung for the limited purpose of securing any current and future judgments against Defendant Stephen Cheung.

### iv. Claim against Marcus Cheung:

The Court finds that Plaintiff has alleged sufficient facts to add Marcus Cheung. (Pl. Br. at 13, ECF No. 168-1). Plaintiff alleges that Defendant arranged for Marcus Cheung to obtain a ten-percent ownership of Eastchester. (Prop. Am. Compl. at 11, ECF No. 168-25). Plaintiff cites to Marcus Cheung's deposition testimony to demonstrate that on or around July or August 2014, Defendant gave a $50,000 gift to his son, Marcus Cheung, to renovate his home. (Pl. Br. at 13, ECF No. 168-1) (citing Exh. C. at 4, ECF No. 168-5). Plaintiff argues that Defendant "fraudulently transferred these funds to Marcus to put them out of reach of Plaintiff in execution of a judgment." (Id.). Plaintiff argues that Defendant has not produced any documentation that reflects the transfer of funds to Marcus Cheung. (Id.). Accordingly, the allegations listed above are sufficient to add Marcus Cheung as a defendant for the limited purposes of securing a judgment against Defendant.

### v. Claim against Herman Cheung:

The Court denies Plaintiff's motion to add Herman Cheung as a defendant. (Pl. Br. at 12, ECF No. 168-1). Rosanna Cheung testified that she intended to take out a home equity loan in the amount of $200,000 to give to their son Herman Cheung. (Pl. Br. at 12, ECF No. 168-1) (Decl. Exh. A at 9-11, ECF No. 168). According to Rosanna Cheung's testimony, the purpose of the transfer is intended to give Herman Cheung a chance to attain a loan from the bank in order to start a construction business. (Id.). Although the Court takes into consideration Plaintiff's arguments, Plaintiff has not demonstrated that a transfer of money has been made to Herman Cheung. Moreover, Plaintiff has failed to demonstrate that Defendant is using Herman Cheung to defraud

Plaintiff of a future judgment. (Pl. Br., ECF No. 168-1, at 12). The Court finds that Plaintiff has failed to state sufficient facts against Herman Cheung required under Federal Rule of Civil Procedure 9b. Accordingly, Plaintiff's motion to add Herman Cheung as a defendant is denied.

### vi. Claim against Eastchester Lace Corp and Frontier Development NY Limited:

Count Six of Plaintiff's Proposed Complaint asserts a claim for fraudulent transfer against Eastchester Lace Corp ("ECL Corp.") and Frontier Development NY Limited ("Frontier"). (Prop. Compl. at 45, ECF No. 168-25). Plaintiff asserts that Defendant used ECL Corp. and Frontier as a as a "means through which to perpetuate his fraudulent conduct as against Plaintiff." (Prop. Sec. Am. Compl. at 36, ECF No. 168-25). Plaintiff alleges Defendant's "transfers of money to ECL or Frontier are intended to hinder, delay or defraud Plaintiff in his attempts to collect on a judgment against him." (Id. at 45). Plaintiff demands judgment against ECL and Frontier and "requiring ECL and Frontier to return all money, property, assets and/or other items of value transferred by Cheung, which should be placed in a constructive trust" (Id. at 45-46).

### vii. Eastchester Lace Corporation:

Plaintiff alleges that Eastchester Lace Corp. "was one of the vehicles through which Defendant perpetrated his fraudulent scheme and breaches of contract and other obligations." (Pl. Br., at 13, ECF No. 168-1).

Plaintiff argues that Defendant has "control and dominion" of ECL Corp. (Pl. Br., at 15, ECF No. 168-1). In support of his argument, Plaintiff points to Plaintiff's deposition testimony and emails between Defendant and Hang Chen. (Exh. D and Exh. K, ECF No. 168). In the deposition transcript, Defendant testified that he voluntarily assisted Hang Chen, owner of Eastchester Lace Corp., in the business component located in the United States. (Exh. D Def. Trans. at 4-7, 11, ECF No. 168-6). Defendant testified that he did not get monetary compensation

for his work. (Id.). However, Defendant and his wife had the authority to sign checks for ECL Corp. and handled a component of copyright registration for ECL Corp. (Def. Trans. at 4-6, 8, ECF No. 168-6). Defendant also testified that, in the past, he identified himself as the president and "controller" of Eastchester Lace Corp. (Id.). In the emails submitted, Defendant is corresponding with Hang Chen about money needed in order to keep the New York office running. (Exh. K at 2-3, ECF No. 168-13). Additionally, Defendant testified that he retained a New York based accounting firm to assist in incorporating ECL Corp. (Exh. D Def. Trans. at 4-7, 11, ECF No. 168-6). The New York Certificate of Incorporation includes the same address as Rosanna Cheung's business address. (Id.). Finally, Plaintiff argues that Defendant transferred funds to various companies including, Eastchester Lace Corp., Frontier-Hong Kong and Frontier Development NY Ltd. (Pl. Br., at 13, ECF No. 168-1). In support of his argument, Plaintiff cites to Defendant's deposition transcript. There, Defendant testified that he was authorized to sign checks and transfer funds from ECL Corp. to other entities in China. (Exh. D at 9-11, ECF No. 168-6). (Pl. Br., at 13-14, ECF No. 168-1). In Plaintiff's Reply, Plaintiff contends that Liso Lee is Defendant's sister in-law and also an employee of ECL Corp. (Pl. Rep. at 5, ECF No. 170). In response to Defendant's argument that he transferred $450,000 to Liso Lee to repay his debt, Plaintiff argues that these payments are not repayments of Liso Lee's loan but "part of a scheme to transfer his funds to their mutual 'hk account' for safekeeping." (Id.).

Plaintiff also submits that ECL Corp "failed and refused to produce documents demanded in a validly served subpoena or to, thereafter, comply with the Court's Order compelling such response." (Pl. Br. at 17, ECF No. 168-1).

### viii. Frontier Development NY, LTD

Plaintiff also seeks to bring claims against Frontier. The following are the allegations concerning Frontier. Plaintiff alleges that Frontier serves as a sham company. (Pl. Br. at 16-17, ECF No. 168-1). Plaintiff alleges that Frontier is a corporation incorporated under the laws of the state of New York. (Prop. Sec. Am. Compl. at 3, ECF No. 168-25). Plaintiff alleges that Frontier, which was based in Hong Kong, "did not have manufacturing facilities or any substantial assets." (Id. at 5). Plaintiff alleges that Cheung and his sister Liso Lee managed Frontier's operations, "which, for all intents and purposes, acted as a division of Eastchester for purposes of collecting Eastchester's payments and other purposes." (Id. at 7). Plaintiff alleges "Lee, at Cheung's direction, told Maidenform that it should change an existing purchase order from Westchester to Frontier and 'place the lace order to Frontier directly instead of Westchester.'" (Id. at 27). Plaintiff alleges that from 2013 through 2014, Defendant, "with the aid of Bernstein, continued to orchestrate the wholesale diversion of Westchester's customers to Eastchester and Frontier. (Id.). Plaintiff alleges, "Frontier-NY and ECL Corp are either the same business or, as Bernstein testified, Frontier-NY collects money for ECL Corp." (Id. at 17). In support of its argument, Plaintiff cites to Geremy Bernstein's deposition testimony. There, Bernstein testified that after leaving Westchester Lace Corp., he sold "lace out of Eastchester Lace New York." (Decl. Ex. V. at 3, 4, ECF No. 124). Furthermore, Bernstein testified that that "Frontier is the officer for Eastchester in China" and that Defendant had business cards prepared with the company name, "Eastchester Frontier." (Decl. Ex. V. at 4-5, ECF No. 124).

At this time, the Court does not find that there is sufficient evidence that Defendant conveyed funds to ECL Corp. or Frontier in order to hinder, delay or prevent Plaintiff from attaining a future judgment. Plaintiff has not properly pled a claim against ECL Corp. that

16

complies with the Federal Rule of Civil Procedure 9b. For example, the Court agrees that there is evidence that Defendant has control and dominion of ECL. However, in his proposed complaint, Plaintiff does not allege when Defendant transferred money to either ECL Corp or Frontier. (Prop. Compl. at 45-49, ECF No. 168-25). There is no indication whether the transfer was made after the Complaint was filed. (Id.). Furthermore, Plaintiff has failed to identify what amounts of money, if any, were transferred from Defendant to the proposed defendants. (Id.). Accordingly, Plaintiff's motion to add ECL Corp and Frontier is denied.

b.      **Undue Delay, Undue Prejudice and Bad Faith**

Defendant does not argue that the proposed claims are late, prejudicial or were made in bad faith. However, the Court will address each of these arguments.

Unfair prejudice is usually found when there has been a significant, unjustified delay in moving to amend that creates an unfair disadvantage for the non-moving party. Delay alone will not justify denying a motion to amend. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (holding that mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay). Only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party," would delay serve as a proper justification for denying leave to amend. Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984) ("The question of undue delay, as well as the question of bad faith, requires that [the Court] focus on the plaintiff['s] motives for not amending [its] complaint to assert [the] claim[s] earlier; the issue of prejudice requires that [the Court] focus on the effect on the [defendant].").

Plaintiff argues there is no showing of undue delay as he filed a motion to amend the complaint to address this matter on August 18, 2016 shortly after he discovered "that Defendant

had transferred interest in his house to his wife for no valuable consideration." (Pl. Br. at 19, ECF No. 168-1).

Plaintiff asserts that Defendant cannot claim undue prejudice in this instance as Defendant's actions demonstrate that he engaged in the transfer of assets after the commencement of this suit. (Pl. Br. at 19, ECF No. 168-1). Therefore, Plaintiff contends, "Defendant cannot claim 'prejudice' in being forced to answer for these actions when he knew they would likely be challenged." (Id.).

Plaintiff contends that there is no showing of bad faith as "[t]hese amendments are narrowly tailored to prevent Cheung, his family members, and related corporate entities from profiting from fraudulent conduct to prevent Edelson from being able to collect on a judgment against Cheung." (Pl. Br. at 20, ECF No. 168-1). Additionally, Plaintiff asserts that Rosanna Cheung's testimony demonstrates that "Defendant is trying to put the final nail in the coffin, so to speak, by removing his interest in a valuable piece of property he still has in the United States." (Id.).

The Court finds that there is no showing of undue delay, prejudice or bad faith. The record cannot support a finding that Plaintiff engaged in undue delay or that Defendant would be unfairly prejudiced by Plaintiff's proposed pleadings. Plaintiff's motion is timely considering he learned about the alleged facts through discovery, in particular, the deposition of Defendant, Rosanna Cheung and Marcus Cheung. Similarly, nothing in the record suggests that Plaintiff seeks amendments and to supplement the Complaint in bad faith or with a dilatory motive.

## II. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend the Complaint is granted - in - part and denied - in - part. A revised Amended Complaint consistent with this Opinion shall be filed on or before October 10, 2017.

                                                                               **JOSEPH A. DICKSON, U.S.M.J.**

cc:     Honorable Jose L. Linares, U.S.D.J.